K.C. ROOFING CO., INC., d/b/a Cloud
Roofing Company, Appellant,

v.

Carlos and Aurora ABUNDIS, Appellees.

No. 04–96–00273–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 26, 1997.

Rehearing Overruled March 11, 1997.

Earle Cobb, Jr., San Antonio, for appellant.

Byron L. LeFlore, Jr., Matthew D. Bradley, Gresham, Davis, Gregory, Worthy & Moore, P.C., San Antonio, for appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

## FACTS

Carlos and Aurora Abundis had a house in Helotes that leaked in one corner. They hired K.C. Roofing Co., Inc., d/b/a Cloud Roofing Company ("Cloud"), to repair the tile roof. A contract was entered into on April 15, 1992, and signed by both parties. The roof repairs were to cost $6,150. The contract specifically provided: "the entire roof will be warranted against leaks for two years." The Abundis family paid $3,000 down, with the remainder due upon completion of the work.

Cloud subcontracted the work. Shoddy workmanship resulted in a roof that leaked worse than it did before the repair, and the leaks were no longer contained in one area. The piano was damaged. Leaks developed here and there throughout the house. Sheetrock and paint were damaged. Mr. Cloud himself inspected the property and admitted the work was substandard. He offered to refund the $3,000 and walk away from the property. The Abundis family did not think this squared things, and refused the offer. Ultimately, Abundis hired another roofing company, Fry Roofing, to redo the job, which they did for $13,300. This amount was paid by the Abundis family. By the Spring of 1995, three years after the original contract with Cloud, the work was completed. The leaks stopped. The Abundis family was then forced to spend $1,470 on paint and sheetrock repair due to the water damage.

The Abundis family sued Cloud under the Deceptive Trade Practices Act (DTPA).

## TRIAL COURT ACTION

Trial was to the court, which, having heard evidence from all witnesses on both sides of the issue, found Cloud had not done the work in a "workmanlike manner according to standard practices" and awarded damages. The damages awarded were as follows:

| | | |
|---|---:|---|
| $ | 3,000 | refund of contract payment |
| | 1,470 | actual damages |
| | 2,940 | trebled damages |
| | 3,600 | attorney's fees |
| $11,010 | | total damages (plus appropriate interest) |

Cloud timely appeals. We affirm.

## POINTS OF ERROR

Cloud brings forth six points of error with remarkable brevity of argument—one page

for all six points. We also will be brief, though not so brief as appellant's argument.

### Sufficiency of the Evidence

 The first two points of error are insufficiency of evidence points. The first of these claims that the court erred in holding that Cloud represented that the roof would not leak in violation of section 17.46(b)(7) of the DTPA. The second point of error alleges the court erred in holding that the conduct was knowing. We review challenges to the legal and factual sufficiency of the evidence in a bench trial under the same standard used in reviewing the sufficiency of the evidence in a jury trial. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). If more than a scintilla of evidence is offered on a fact, we will overrule the point of error. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). In reviewing a "great weight" or factual insufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Section 17.46(b)(7) defines "false, misleading, or deceptive acts or practices" to include "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." TEX. BUS. & COM.CODE ANN. § 17.46(b)(7) (Vernon 1987 & Supp. 1997). Cloud contracted to fix a roof leak. It guaranteed its work for two years in the contract. Cloud's work resulted in a roof that leaked worse after the work than it did before Cloud began. We find this sufficient evidence to support the court's finding of misrepresentation.

 In regard to the "knowing" element, a violation of the DTPA is "knowingly" committed when the defendant has actual awareness of the offending conduct or breach of warranty giving rise to the consumer's claim. *Id.* § 17.45(9); *Parkway Co. v. Woodruff,* 857 S.W.2d 903, 912 (Tex.App.—Houston [1st Dist.] 1993), *aff'd as reformed,* 901 S.W.2d 434 (Tex.1995). Actual awareness may be inferred from the circumstances. *Parkway Co.,* 857 S.W.2d at 912. Cloud knew it had guaranteed that the roof would not leak. Mr. Cloud confirmed, and admitted, in his testimony that the roof did leak and that the work was not done correctly. He did not fix it though. Instead, Cloud continued to bill the Abundis family for the $3,100 balance under the contract. We find this sufficient evidence to support the court's finding that Cloud's conduct was knowing. Cloud's first two points of error are overruled.

### Notice

 In its third and fifth points of error, Cloud asserts that the trial court erred in trebling damages and awarding attorney's fees because there was no evidence that the Abundis family gave Cloud notice of the problems with the roof under section 17.505 of the DTPA, section 38.002 of the Texas Civil Practice and Remedies Code, or section 27.004 of the Texas Property Code. As a prerequisite to filing suit against any person under the DTPA, a consumer must give written notice to the person at least sixty days prior to filing suit advising the person of the consumer's complaint and the amount of damages claimed, including attorney's fees. TEX. BUS. & COM.CODE ANN. § 17.505(a) (Vernon Supp.1997). Additionally, a claimant seeking damages arising from a construction defect must give written notice by certified mail, return receipt requested, to the contractor at least sixty days before filing suit. TEX. PROP.CODE ANN. § 27.004(a) (Vernon Supp.1997). Finally, to recover attorney's fees, a claimant must present the claim to the opposing party at least thirty days before trial. *Board of County Comm'rs of County of Beaver Okla. v. Amarillo Hosp. Dist.,* 835 S.W.2d 115, 127 (Tex.App.—Amarillo 1992, no writ).

The Abundis family did not give the notice required, but did plead the exception to the

rule, which states in part: "If the giving of 60 days' written notice is rendered impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations ..., the notice provided for in Subsection (a) of this section is not required." TEX. BUS. COM.CODE ANN. § 17.505(b) (Vernon Supp.1997). The property code contains a similar exception. *See* TEX. PROP.CODE ANN. § 27.004(c). Cloud challenged this exception in its answer and asked for a plea in abatement. No hearing was requested, though, and the matter was never brought to the attention of the trial court. The plea in abatement, pleaded only in the answer, was not verified. Not being verified, the automatic abatement provisions contained in section 17.505(d) of the DTPA were never triggered. Cloud twice asked for motions for continuance, but on other grounds. He never asked for a hearing on the plea in abatement either directly or indirectly, and was not entitled to automatic abatement because of non-verification. Certainly, Cloud was entitled to a hearing if properly requested because the issue had been joined in the initial pleadings regarding whether the exception pleaded by the Abundis family was supported by the evidence. There is nothing in the record that establishes the trial court, never having been asked by anyone, ever considered the matter. There is some evidence in the record, though, to support the exception of an impending statute of limitations. The contract was signed in 1992, and by May 1993, the Abundis family was returning the invoices and complaining of leaks. Suit was filed on March 30, 1995. The limitations period for DTPA claims is "two years from the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." *Id.* § 17.565.

Where there is some evidence of notice, or legal excuse for failing to give notice, and no effort on the part of the party contesting these facts to get a hearing or finding, Rule 279 of the Texas Rules of Civil Procedure requires that the omitted issue of notice under the DTPA be deemed as found by the trial court in support of its judgment. TEX.R. CIV. P. 279. A similar result is found in *Cielo Dorado Dev. v. Certainteed Corp.,* 744 S.W.2d 10 (Tex.1988). In that case, the plaintiff's attorney in the DTPA action testified he had given notice. *Id.* at 10. The defendant denied it. *Id.* at 11. Thus, the issue was joined. The defendant did not ask for a finding, however, and did not object to its nonsubmission. *Id.* The court stated:

> The testimony by Cielo Dorado's attorney was conclusory, but it came in without objection. We hold that constituted some evidence of proper notice under the DTPA. Again, *assuming* proper notice was Cielo Dorado's issue, Certainteed was required to object to its non-submission. Certainteed made no such objection, and there is some evidence to support a finding that notice was properly given under the DTPA. In these circumstances, Tex. R.Civ.P. 279 requires that the omitted issue of notice under the DTPA be deemed as found by the trial court in support of its judgment.

*Id.* (emphasis in original).

As the Supreme Court additionally said in *Hines v. Hash,* 843 S.W.2d 464 (Tex.1992):

> The notice requirement of the DTPA is clearly mandatory, but that feature alone does not determine the consequences for failure to comply with it.... In this case, Hash waived notice under the DTPA by failing to request abatement.

*Hines,* 843 S.W.2d at 467, 469.

■ The Abundis family did not claim that they gave proper notice, but they did properly raise the statute of limitations excuse. It was never challenged at a hearing or by a finding or objection. We hold that Cloud's failure to seek a hearing or finding, and its failure to object to the court's proceeding, waived the notice provision when there was evidence in the record to support the trial court's judgment.

■ Appellant's final complaint that the request for attorney's fees was not timely presented is not supported by the record. There were frequent requests by the Abundis family for Cloud to fix the leaking roof.

When suit was brought on March 30, 1995, attorney fees were requested in the amount of $5,000. These were not paid within thirty days and, indeed, were not paid at the time of the judgment on February 1, 1996 when attorney's fees in the amount of $3,600 were awarded. Further, attorney fees are recoverable under the statute regardless of when suit is filed if payment is not made within the thirty day period. *Commercial Union Ins. v. La Villa Indep. Sch. Dist.*, 779 S.W.2d 102, 107 (Tex.App.—Corpus Christi 1989, no writ); *see also Birdwell v. Texins Credit Union*, 843 S.W.2d 246, 251 (Tex.App.—Texarkana 1992, no writ). As the Texarkana Court of Appeals noted when it considered this issue:

> The only requirement is that presentment of the claim be made at least thirty days before the trial, even if made after the suit is filed.... In the present case, since more than thirty days elapsed from the time of filing suit until the judgment, the requirements under Article 38.002 have been met.

*Birdwell*, 843 S.W.2d at 251. Attorney's fees were requested and pleaded by Abundis several months before the trial. Thus, they were timely presented. Cloud's third and fifth points of error are overruled.

## Damages

█ In Cloud's fourth point of error, it claims the trial court erred in awarding damages for both breach of contract and recission of the contract. Actual damages recoverable under the DTPA are defined as "the total loss sustained [by the consumer] as a result of the deceptive trade practice." *Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex.1985); *see also Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992). The trial court awarded the Abundis family the $3,000 they had already paid. But this did not make them whole. Their roof leaked worse than it did before the work began. Further, they sustained water damage that had not been there before Cloud's work, which required repair work of $1,470. The total loss to the Abundis family consisted of the $3,000 and the $1,470. Recovery of both of these amounts is allowed under the DTPA.

## Discovery Freeze

█ In its sixth and final point of error, Cloud asserts that the trial court erred by freezing discovery and pleadings. Trial was set for October 26, 1995. Cloud filed a motion for continuance based on scheduling conflicts. The motion was heard three days prior to the trial setting. The court continued the case to November 2, 1995, but closed discovery effective on the date of the order granting the continuance. The suit had been filed since March 30, 1995, but Cloud had done no discovery. Although Cloud complains of this discovery freeze in the few days remaining before the new trial date, it is difficult to imagine what discovery Cloud would have done had the freeze not been there. Between state and local procedural time requirements, there is not much that can be done this close to trial. Cloud never stated in his brief or in the argument before this appellate court what he would have liked to have done in this last week before trial. Nor did he tell the trial judge. He simply complains of the ruling. We review the action of the trial court under an abuse of discretion standard. *Firestone v. Claycombe & King*, 875 S.W.2d 727, 729 (Tex.App.—Dallas 1994, writ denied).

The freezing of discovery is generally error, and can be reversible error if harm is done. Two relatively recent cases deal with freezing discovery and, in both cases, it was found the trial court was in error in doing so. The first of these cases was *General Electric Co. v. Salinas*, 861 S.W.2d 20 (Tex.App.—Corpus Christi 1993, no writ). In *Salinas*, the trial court froze discovery from June 7 until August 9 in a complicated wrongful death case. *Salinas*, 861 S.W.2d at 22. This was held to be an abuse of discretion:

> The freezing of discovery in this case is neither a sanctions order under Texas Rule of Civil Procedure 215, nor was it a docket control order entered pursuant to a discovery schedule established at a pretrial conference under Texas Rule of Civil Procedure 166(c), nor may it be characterized as a protective order under Texas Rule of Civil Procedure 166b(5). In short, we find no authority in the Rules for the trial court

to arbitrarily, and without prior notice to the parties, freeze discovery in this manner.... We hold that the trial court clearly abused its discretion in entering the present order arbitrarily freezing discovery at the time of the initial trial setting.

*Id.* at 23.

A similar result was reached in *Firestone v. Claycombe & King,* 875 S.W.2d 727 (Tex. App.—Dallas 1994, writ denied). Discovery was frozen in this case from March 11, the date the case was set for trial, to May 20. *Firestone,* 875 S.W.2d at 728. Again, an abuse of discretion was found. *Id.* at 729.

We find the trial court abused its discretion in this case in freezing discovery. However, in this case, considering the fact that the time for discovery had passed when the freeze order was issued, and that no discovery was in progress, had been in progress, or had even been requested, we find the error harmless. Cloud's sixth point of error is overruled.

**Findings of Fact and Conclusions of Law**

■ Cloud did not bring forth a point of error on the trial court's failure to make findings of fact and conclusions of law, but as it was mentioned in the briefs and at oral argument, we address the point so that the parties will know this court's opinion.

If findings of fact and conclusions of law are properly requested, the trial court has a mandatory duty to make and file them. *Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex.1989). Further, the failure is presumed harmful, unless the record affirmatively shows that the complaining party suffered no injury. *Id.* The proper procedure for making such a request and preserving error is a two step process. First, the requesting party (Cloud in this case) must request the court to state in writing its findings of fact and conclusions of law. Tex.R. Civ. P. 296. Cloud did this. If, for whatever reason, the trial court does not comply with the request, a reminder is required. The reminder procedure is found in Rule 297 of the Texas Rules of Civil Procedure. It says, in summary, that within thirty days of the original request, if nothing has

been done, the requesting party must file a "Notice of Past Due Findings of Fact and Conclusions of Law." Tex.R. Civ. P. 297. The record does not reflect that Cloud ever filed this reminder. We acknowledge that Cloud says he did it, but nothing in the transcript or statement of facts bear this out. Other than the original request, there are no motions, no requests, no hearings, and no complaints at the trial level. It is not this court's business to believe or disbelieve, and we do not do so. We simply find it is not in the record, and rule accordingly that this argument cannot be considered.

**CONCLUSION**

Having considered all the points of error, the one-page argument in support of those points, and the unassigned point of error that was argued, we find no reversible error. We affirm the judgment.